## BAKER v. HODGES. (No. 698.)

(Court of Civil Appeals of Texas. Beaumont. May 25, 1921.)

**1. Railroads ⬅⬆307(4)—Flagman only required at unusually dangerous crossings.**

A railway company's duty to keep a flagman at a public highway crossing only arises where the crossing can be said to be attended with extra hazard or unusual danger, which depends upon the extent of the use of the crossing and the surrounding circumstances.

**2. Railroads ⬅⬆350(5)—Negligence in maintaining flagman question of fact.**

If a highway crossing over a railroad is used extensively and frequently by the public, and trains are operated over it at frequent intervals, and there are obstructions materially obstructing the view of approaching trains, it is a question for the jury, or for the court sitting without a jury, whether the failure to have a flagman at the crossing constitutes a failure to use such care as an ordinarily prudent person would use under the same or similar circumstances.

**3. Railroads ⬅⬆308—Violation of ordinance requiring flagman negligence.**

Where a valid city ordinance requires a flagman at a railroad crossing, it is negligence as a matter of law on the part of the railroad company to fail to comply with such ordinance, and if such failure is the proximate cause of an injury to one using the crossing, the railroad company is liable.

**4. Railroads ⬅⬆350(5)—Negligence of conductor failing to station flagman at crossing held question of fact.**

Where the conductor of a freight train, standing on a passing track for the purpose of allowing a passenger train to pass, knew that the passenger train was soon to arrive, and that the view of persons using the crossing would be greatly obstructed by the presence of the freight train, and that a switch engine near by, puffing and making a noise, possibly prevented persons from hearing the approach of the train, and that the freight train left only a narrow passage over the track, and that the crossing was extensively used, it was a question of fact for the trial court sitting as a jury whether he acted as an ordinarily prudent person in failing to place some member of the crew at the crossing as a flagman until the passenger train had passed.

**5. Railroads ⬅⬆337(1)—Failure to have flagman at obstructed crossing held proximate cause of injury.**

The failure of the conductor of a freight train waiting on a passing track at a highway crossing for a passenger train to pass to station a member of the crew at the crossing as a flagman was the proximate cause of an injury to one struck by the train, though other persons attempted to warn him of the approach of the train, and he failed to heed the warning, where it appeared that he did not hear their warnings or see their signals.

**6. Railroads ⬅⬆316(4)—Speed ordinance immaterial where speed was negligent.**

Whether an ordinance limiting the speed of trains to 10 miles an hour applied to the receiver of a railway was immaterial, where the trial judge found as a fact that the receiver was negligent in operating the train at the rate of speed at which it was operated over a crossing, and such finding was supported by the evidence.

**7. Railroads ⬅⬆350(11)—Negligent speed held question of fact.**

Whether the operation of a train at a speed of 25 miles an hour over the principal crossing in a city or town of 1,200 to 1,400 inhabitants, which was near the depot and station and was obstructed by a long freight train, cut in the middle of the street and leaving a passage of only 16 feet for the use of the public, was negligence, was a question of fact for the trial court sitting without a jury.

**8. Appeal and error ⬅⬆742(1)—Statement under assignment as to contributory negligence should be full and fair.**

Under rule 31 for Courts of Civil Appeals, an assignment of error, complaining of a finding that plaintiff was not guilty of contributory negligence, should be supported by a full and fair statement of all the evidence in the record bearing upon the question of contributory negligence.

**9. Damages ⬅⬆130(2)—Verdict of $3,500 for injuries to shoulder and other injuries not excessive.**

Where a farmer, 42 years old, also owning and operating a cotton gin, and in robust health, was confined in the hospital for 12 days and to his house for about 6 weeks as the result of an injury, and 2 years after the accident his shoulder was still so badly injured that he could not raise his arm above his head or chop with an axe or use a hoe, and he had suffered a great deal of physical pain, and his physical capacity for work was reduced fully two-thirds, an award of $3,500 as damages was not excessive.

**10. Damages ⬅⬆62(2)—Only ordinary care required in treatment of injuries.**

An injured person is only required to use ordinary care and prudence in the treatment of his injuries.

Appeal from District Court, Robertson County; John Watson, Judge.

Action by A. J. Hodges against James A. Baker, receiver of the International & Great Northern Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

H. A. Bush and J. L. Goodman, both of Franklin, and Henderson & Ranson, of Bryan, for appellant.

J. C. Scott, of Corpus Christi, K. W. Gilmore, of Houston, and Perry & Woods, of Franklin, for appellee.

HIGHTOWER, C. J. This suit was filed by the appellee, Hodges, as plaintiff below,

against the appellant, James A. Baker, in his capacity as receiver of the International & Great Northern Railway Company, for the recovery of damages because of personal injuries alleged to have been sustained by appellee, and also for damages to his automobile. The accident occurred in the town of Franklin, Robertson county, about sundown on the 28th day of November, 1917, while the appellee was driving his automobile along one of the principal streets of that town, and where the same is crossed by the railway track.

It was alleged by appellee that his view of the track upon which the approaching train was traveling was obstructed by a freight train, which had been placed upon a side track near and parallel to the main track, and that the freight train was then cut so as to leave the crossing open for passage, etc. Plaintiff then alleged that there was no flagman at this crossing, and that the train, at the time of the accident, was running at a dangerous and excessive rate of speed, and that those in charge of the train gave no warning of its approach to the crossing. The specific grounds of negligence alleged were (1) that appellant failed to have stationed at said crossing where said freight train had been cut a flagman or some other employé, who could and should have warned appellee and other persons about to cross said railway track of the aproach of said passenger train; (2) that appellee was guilty of negligence in placing said freight train and box cars on said side track in such position that they obstructed the view of the crossing and the main line thereabout, so that appellee and any person approaching said crossing from the south of the track could not see the approach of the passenger train which collided with appellee's automobile, until they had passed said freight train and box cars so placed on said side track; (3) that the servants and employés of appellant, in charge of the passenger train, failed to give warning of the approach thereof, by sounding any warning and by failing to ring the bell of the locomotive on the engine, as it approached said crossing in the corporate limits of the town of Franklin, in violation of a duty which appellant owed to appellee and others who might be about to cross said track, and that such failure was in direct violation of an ordinance of the town of Franklin, and also in violation of the statute of this state, which required that the bell on said locomotive should be rung at a distance of at least 80 rods from said crossing, and should be kept ringing until said crossing had been passed; (4) that the servants and employés of appellant, in charge of said passenger train, were at the time of said collision operating and running the same at a rate of approximately 25 miles per hour, which rate of speed at said time and place and in proximity to said street crossing was reckless and dangerous, and was, besides, in direct violation of an ordinance of said town, which limited the rate of speed of trains to 10 miles per hour.

Appellant answered by general demurrer and special exceptions unnecessary to mention, and then specially alleged that appellee's injuries were the result solely and proximately of his own contributory negligence, in the following respects: (1) Because he failed to note the approach of the train, the warning of which was given by the flash of the headlight, by the bell and whistle, and that if he had been using any care for his own safety he could have heard same; (2) because he was violating the law of the state in approaching a railroad crossing at a rate of speed exceeding 6 miles per hour, and that he was doing same in a reckless and in an intoxicated, or semi-intoxicated, condition; (3) that as he approached said crossing, he was warned by different parties that the train was coming, and he heard same, or could have heard same if he had been paying any attention to his own safety, and that on account of such contributory negligence on his part, which was the proximate cause of his injuries, if any, appellee sustained such injuries, if any, and appellant, therefore, is not liable for same.

The case was tried before the trial court without a jury, and judgment was rendered in favor of appellee for $3,900, to which judgment appellant duly excepted, and has perfected an appeal to this court.

At the request of appellant, the trial judge prepared and filed findings of fact and conclusions of law, which are quite full, and they will serve as a sufficient statement of the facts upon which the judgment appealed from was based, and we copy them in full, as follows:

"(1) I find that Jas. A. Baker is receiver of the International & Great Northern Railway Company, and that he was such receiver on the 28th day of November, A. D. 1917, the date on which plaintiff received the injuries for which judgment is rendered herein; and that, as such receiver, the said Jas. A. Baker did, at the said time, and does now, operate a line of railway through Robertson county, Tex., and through the incorporated city of Franklin, in said county and state, where said injuries were inflicted upon plaintiff.

"(2) I find that, on the 28th day of November, 1917, defendant, for the use and convenience of the public, kept and maintained a public road and street crossing over and across his said line of railway, which was the principal crossing in the said city of Franklin, and located just east of and adjacent to the passenger and freight depot in said city; said street at said crossing being about 80 feet in width.

"(3) I find that the said city or town of Franklin was, on said date, the county seat of Robertson county, that its population was approximately 1,200 to 1,400 inhabitants; that the principal business portion of said town was located on the north side of defendant's railroad, and about ⅛ of the population of

said town resided on the south side of said railroad; that a large trade territory tributary to said town was also located south of said railroad, and that said crossing was the one mostly used by people residing in and near said town on the south side of said railroad in going to and returning from the business portion of said town, and that said crossing was the principal crossing used by the public generally while passing between the north and south sides of said town.

"(4) I find that, at the point where said railroad crossed said street, at said time, defendant had and maintained a passing track, which was located about 10 feet south of the main line of said railroad, and also had a side track, commonly called the house track, which was located about 39 feet south of said passing track, and that Carter & Maris' lumber office was located about 60 feet south of said house track and on the east side of said street.

"(5) I find that, on said date, plaintiff, in company with two of his neighbors, W. C. Streater and W. A. Sparks, who were riding in his automobile with him, while driving across said railroad at said crossing was struck by a west-bound passenger train, which was then and there within the scope of their employment, and that, by reason of said collision, and as a direct and proximate result thereof, plaintiff was seriously and permanently injured, and his automobile was also badly broken, injured, and demolished as the proximate result of said collision.

"(6) I find that, a few minutes before said collision, the servants and employés of defendant in charge of a local freight train, while acting within the scope of their employment, placed a long string of box cars on said passing track, leaving an opening or cut through same at said crossing only about 16 feet wide, and that the section of said box cars extending eastward from said crossing covered practically all of the said passing track lying east of said street, and said section of cars also extended westward to about the center of said street, the west end of said east string of cars being so placed that the same extended into and across a part of the beaten roadway near the center of said street, thereby obstructing the view and passageway along that part of said street; that said string of box cars were in said position at the time of said collision, and they effectually obstructed the view of persons approaching said crossing from the south, and would and did prevent such persons from seeing the approach of a west-bound train on the main line track while approaching said crossing. I find that the act of defendant's said servants and employés, in placing said string of box cars so that the same extended into and incumbered said street and roadway, was negligence on their part, and that said negligence was a proximate cause of plaintiff's said injuries and damage.

"(7) I find that the servants and employés of defendant, in charge of said freight train, while acting within the scope of their employment, switched said freight train and box cars on said passing track for the purpose of letting said passenger train pass by; that it was then only a few minutes until said passenger train was due to arrive, and the conductor of defendant in charge of said freight train then knew that said passenger train was soon due to

arrive; that said conductor knew that said crossing was the principal crossing in said town, and that the same was frequently used by the public; that, at the time of the arrival of said passenger train the locomotive of said freight train was working and moving about only a short distance down to the west from said crossing, being engaged in spotting some cars on one of the side tracks, and the same was then and there puffing and emitting steam, and the bell thereon was ringing, all of which made considerable noises at and about said crossing, all of which was known to said conductor; that, notwithstanding the said conditions then existing at and about said crossing, said conductor, while acting within the scope of his employment, failed and neglected to place a member of his train crew at said crossing, and failed and neglected to have any other person at said crossing, to warn persons about to cross there of the approach of said passenger train. I find that such failure and omission of duty on the part of said conductor, under the peculiar conditions and circumstances then existing at said crossing, was negligence on his part, and that said negligence was a proximate cause of plaintiff's said injuries and damage.

"(8) I find that, on said date, and at the time of said collision, there was in full force and effect a penal ordinance of the said incorporated city of Franklin, providing that it shall be unlawful for any operator, engineer, brakeman, conductor, or other person to run, or cause to be run, in or through the corporate limits of said city of Franklin, any engine, car, or train at a greater rate of speed than 10 miles per hour, and prescribing a penalty for the violation thereof; I find, that said passenger train, at the time and place of said collision, which was within said corporate limits, was being run by the engineer thereof who was a servant and employé of defendant, acting within the scope of his employment, and that said engineer was then and there causing said passenger train to be run through the corporate limits of said city of Franklin at a speed which was greatly in excess of 10 miles per hour, and that the running of said train at said time and place at a greater rate of speed than 10 miles per hour was a proximate cause of the injuries and damages sustained by plaintiff in said collision.

"(9) I find that defendant's said passenger train, at the time it collided with plaintiff's automobile, was being run and propelled by the engineer and servant of defendant in charge thereof, and who was then and there acting within the scope of his employment, at a high, reckless, and dangerous rate of speed, to wit, about 25 miles per hour, and that said engineer, in so causing said train to run at such rate of speed at said crossing and in close proximity to said depot and station, was guilty of negligence, and that said negligence was a proximate cause of plaintiff's said injuries and damage.

"(10) I find that plaintiff was not intoxicated at the time of said collision, and that neither of his companions were intoxicated; that plaintiff did not fail to exercise ordinary care for his own safety while approaching said crossing, nor did the said W. C. Streater or W. A. Sparks fail to exercise such care; that plaintiff did not cause his automobile to be run at a greater rate of speed than 6 miles per hour

at any point within 30 feet of said main line track and crossing; that plaintiff did not fail to exercise ordinary care to keep his said automobile under control while approaching said crossing; that plaintiff and his said companions, before going upon said crossing and while approaching the same, each and all looked and listened and did everything that a person of ordinary prudence would do under the same or similar circumstances to discover the approach of trains at and about said crossing, but neither the plaintiff nor either of his said companions discovered or heard the said passenger train until they had passed through the cut or opening in said freight train and around the west end of the east string of box cars on said passing track, and it was then too late, by the use of any means at plaintiff's command, or that of either of his said companions, to avoid said collision and his said injuries and damage occasioned thereby.  I find that neither the plaintiff nor either of his companions were guilty of negligence in any particular while approaching said crossing, and that plaintiff was not guilty of contributory negligence.

(The eleventh finding is immaterial to any contention before this court.)

"(12) I find that, at the time of said colli-, sion, plaintiff was a strong healthy man, 42 years of age, and had a life expectancy of 26.72 years; that, as a direct and proximate result of the negligence of the servants and employés of defendant, while acting within the scope of their respective employments, plaintiff was seriously and permanently injured; that he sustained several cuts and bruises upon his person; that his left clavicle was broken near the middle, and also at the distal end of same, and he has been caused to suffer great pain by reason of his said injuries; that the use of his left arm and shoulder have been greatly reduced thereby.  I find that, by reason of, and as a direct and proximate result of, the said injuries to plaintiff's person, he has been actually damaged in the sum of $3,500 which said sum, if paid now, would reasonably compensate him for his said personal injuries.

"(13) I find that plaintiff did not refuse to follow the advice of his physicians, that he submitted to every reasonable and necessary treatment of his said injuries, and that he was not guilty of negligence in any particular with respect thereto.

"(14) I find that the automobile which was being driven by plaintiff at the time of said collision was at said time the property of plaintiff; that said automobile was, as a direct and proximate result of the negligence of the servants and employés of defendant, while acting within the scope of their respective employments, greatly broken and injured, and that the difference in the market value of said automobile at Franklin, Tex., immediately before said collision and immediately thereafter, is the sum of $400 which said sum would reasonably compensate plaintiff for the injury done to said automobile in said collision.

"Conclusions of Law.

"(1) I conclude, as a matter of law, that the act of defendant's engineer and servant in charge of the passenger train, which collided with plaintiff's automobile, in causing said train to be run at a greater rate of speed than 10 miles per hour through the corporate limits of the city of Franklin, and at the time and place of said collision, was negligence per se on the part of said engineer and servant of defendant, same being in violation of a penal ordinance of said incorporated city of Franklin.

"(2) I conclude that the defendant is liable to plaintiff for each and all of the respective acts of negligence on the part of his said servants and employés, while acting within the scope of their respective employments.

"(3) I conclude that the said defendant, Jas. A. Baker, receiver of the International & Great Northern Railway Company, is justly and legally liable to the plaintiff, A. J. Hodges, in the sum of $3,900 for actual damages sustained by plaintiff, as above found, and that plaintiff should have judgment against defendant for the said sum, together with all costs of this suit."

By the first assignment of error, appellant complains of the sixth finding of fact by the trial court, which was that appellant was guilty of negligence in having the string of box cars or freight cars upon the side track or passing track, as we have shown above, and that such negligence was a proximate cause of appellee's injuries.  The proposition under this assignment is that the presence of the box cars or freight train upon appellant's track could not constitute an independent ground of negligence, as found by the trial court.  In support of this proposition, appellant cites the following cases: M., K. & T. Ry. Co. v. Rogers, 91 Tex. 52, 40 S. W. 956; I. & G. N. Ry. Co. v. Knight, 91 Tex. 660, 45 S. W. 556; Dillingham v. Parker, 80 Tex. 572, 16 S. W. 335; G., H. & S. A. Ry. Co. v. Harris, 22 Tex. Civ. App. 16, 53 S. W. 599; T. & P. Ry. Co. v. Eddleman, 175 S. W. 777. Opposing this proposition, appellee cites H. & T. C. Ry. Co. v. Stewart (Sup.) 17 S. W. 33; G., H. & S. A. Ry. Co. v. Michalke, 90 Tex. 276, 38 S. W. 31.  In our opinion, the holding in the Stewart and Michalke Cases are in direct conflict with the holdings in the Knight, Harris and Eddleman Cases, and it would seem that the conflict is irreconcilable.  It is unnecessary, however, for us to attempt to reconcile such conflict, because we are of, opinion that the trial court's judgment in this case should be affirmed, even if we should sustain the first assignment of error.

At this point, it might be well to say that we sustain every finding made by the trial court, as quoted above, after eliminating from our consideration the sixth finding, made the basis of the first assignment.

The second assignment complains of the trial court's seventh finding of fact, which was that appellant's conductor was guilty of negligence in failing to place some one of his train crew at the crossing in question to flag said crossing or to warn persons about to cross of the approach of appellant's passenger train; the contention being that neither the pleadings nor proof warranted such finding.  The first proposition under said

assignment is, in substance, that in the absence of pleading and proof showing unusual circumstances surrounding the crossing rendering it unusuallly hazardous, negligence cannot be predicated upon the failure of the railway company to keep a flagman at such a crossing. The next proposition under the assignment is that the evidence showed, without dispute, that the appellee was warned of the approach of the passenger train to the crossing, before he attempted to go over the crossing, and that his disobedience of such warning was the proximate cause of his injuries, or at least failure on the part of appellant to have a flagman at the crossing was not the proximate cause of the collision.

[1-3] With reference to the first proposition, it might be conceded that it is well-settled law in this state that a railway company is not bound to keep a flagman or watchman at all public crossings over its track. On the contrary, it has been held in several cases, by our Supreme Court, that the duty to keep a flagman at such a crossing only arises where the crossing can be said to be attended with extra hazard or unusual danger. This will depend upon the extent of the use of the crossing and the circumstances surrounding it. If the crossing be one that is used extensively and frequently by the public, and trains are operated over the crossing at frequent intervals, and there be objects or obstructions of any character at and near such crossing that materially obstruct the view thereof and of approaching trains to the same, then it should be left to the determination of a jury, or court trying the case without a jury, to say whether in failing to have a flagman at the crossing the railway company used such care as an ordinarily prudent person would have used under the same or similar circumstances. This we understand to be the rule announced, substantially, in Railway Co. v. Magee, 92 Tex. 616, 50 S. W. 1013; Railway Co. v. Moore, 107 S. W. 658; Railway Co. v. Walker, 171 S. W. 264; Railway Co. v. Tisdale, 199 S. W. 350. And, of course, in a city where a valid city ordinance requiring a flagman at a railroad crossing is in effect, it would be negligence, as a matter of law, on the part of a railway company to fail to comply with such ordinance, and if that failure should be the proximate cause of an injury to one using the crossing, liability would be established.

[4] The appellee in this case, however, did not contend that it was the duty of appellant to keep a permanent or regular watchman or flagman at the crossing in question at all times, but his contention was and is that under the peculiar facts and circumstances at the time of the collision it was the duty of appellant, through the conductor of its freight train, to place one of the crew of that freight train at the crossing to warn persons about to use it of the approach of the passenger train, which collided with the automobile in this case. As the findings of the trial court indicate, and which we approve, this freight train had arrived in the town of Franklin just a few moments before the fast passenger train was due to arrive, and the conductor of the freight train put the same on the passing track, for the purpose of getting it out of the way of the passenger train, which he knew was soon to arrive, and he also knew that the view of persons using that crossing from the south side of the main line would be greatly obstructed, or rather that the view of appellant's main line for a long distance east of the crossing would be largely obstructed by the presence of these box cars and freight train on the passing track, and he also knew that the switch engine near there was puffing and making a noise, which would, perhaps, have the effect of preventing persons about to use the crossing from hearing the approach of the passenger train, and he also knew that he had only left a passage of about 16 feet in width over the track at that point. He also must be held to have knowledge, approximately at least, of the use that was made of that crossing by the public, and it was shown by the evidence as a fact that that use was quite extensive. In view of such facts, and we have not stated them all, bearing upon the point, we have no hesitancy in concluding that it was a question of fact for the trial court to determine whether appellant's conductor acted as an ordinarily prudent person would have acted in failing to place some one of his crew at the crossing as a flagman until appellant's passenger train had gone over that crossing. And the trial court having found that such failure on the part of appellant's conductor was negligence, and that such negligence became a proximate cause of the collision which resulted in appellee's injuries, the judgment must be affirmed, unless appellee was guilty of contributory negligence.

[5] With reference to the second proposition under this assignment, which is that the failure to have a flagman at the crossing could not have been the proximate cause of the collision, because, as claimed by appellant, appellee was warned by other persons of the approach of the train, and failed to heed the warning, and that his failure itself was a proximate cause and convicted him of contributory negligence, it is sufficient to say that the undisputed proof is, by both of the persons who claimed to have hallooed and waved at appellee, as he started over the crossing, that appellee did not appear to hear them or to see the signals attempted to be conveyed to him. Therefore this proposition cannot be sustained. That the trial court was warranted in finding that appellant's conductor was guilty of negligence in failing to place a flagman at this crossing on the occasion in question, see the companion

case of Baker v. Streater, 221 S. W. 1043; 8 Am. & Eng. Enc. of Law, 391, 392; G., H. & S. A. Ry. Co. v. Linney, 163 S. W. 1035; I. & G. N. Ry. Co. v. Jones, 60 S. W. 978; M., K. & T. Ry. Co. v. Hurdle, 142 S. W. 992; Railway Co. v. Zumwalt, 226 S. W. 1080.

[6, 7] With reference to the third assignment of error, under which it is contended that the ordinance of the town of Franklin, limiting the speed of trains within the corporate limits to 10 miles per hour, had no application to appellant in his capacity as receiver of the railroad, and that, therefore, the speed of the train, if it was over 10 miles an hour, could not be negligence per se, as held by the trial court, we say that we doubt the correctness of such contention, but it is entirely unnecessary to decide that point, for the reason that the trial judge also found as a fact that appellant was guilty of negligence in operating the train at the rate of speed at which it was operated at the time over the crossing, under all the conditions and circumstances then attending, and we think this finding has support in the evidence. The trial judge found as a fact that the train was being operated at a speed of 25 miles per hour over this crossing, which was in close proximity to the depot and station of appellant, and over a crossing used more than any other in the town of Franklin, and which was obstructed, as we have shown, by the long freight train, which had been placed right near the main track, and which had been cut practically in the middle of the street, and a passage left of only 16 feet for the use of the public. Under these circumstances, we think it might well be left to a trial court or jury to determine whether a railway company would be guilty of negligence in operating a train over such a crossing at the speed of 25 miles per hour. We sustain this finding of negligence on the part of the trial court, and also his finding that the speed of the train was a proximate cause of of the collision and appellee's injuries.

[8] The fourth and fifth assignments complain of the finding of the trial court, to the effect that the appellee was not guilty of contributory negligence. We overrule the assignments, and in this connection we cannot refrain from calling attention to the fact that the statement of the evidence subjoined to these assignments and propositions thereunder is not such a full and fair statement of the evidence in this record bearing upon those assignments as the rules contemplate should have been made in appellant's brief. Rule 31 (142 S. W. xiii) for the Courts of Civil Appeals requires, substantially, that counsel for appellant should make a full and fair statement of all the evidence in the record that bore upon this question of contributory negligence; that such statement should be made upon the professional honor of counsel, and while we would not be understood as intimating that counsel for appellant in this

case have purposely omitted evidence found in the record materially bearing upon these contentions, yet after careful inspection of the statement of facts in this connection, we find that counsel for appellant have, in fact, omitted to embrace in this statement in the brief everything that bears materially upon these assignments, and we have been compelled to go largely into the statement of facts to determine these matters. Counsel for appellee have interposed an objection to our consideration of these assignments at all, because of the failure of appellant's counsel to make that full and complete statement of the evidence in support thereof as they should have made. We have given them consideration, however, but it is manifest that they cannot be sustained, and they are overruled.

The sixth assignment complains of the finding of the trial court to the effect that appellee's automobile was traveling at a speed less than 6 miles an hour at the time it approached within 30 feet of the crossing in question. We overrule this contention. Such finding by the trial court has sufficient support in the evidence as we find it in the record.

The seventh assignment complains that the judgment for $3,500 for personal injuries sustained is excessive, it being contended by appellant that the evidence showed that there was no permanent injury to appellee, and that he had not suffered any great pain therefrom, and that he was never disabled for more than 10 or 15 days on account thereof; and, further, it is contended that if there had ever been any pain or injury, same had been caused by appellee's own negligence in failing to follow the advice of his physician; that the use of his left arm and shoulder had not been impaired, and that his earning capacity has not been reduced; and that he had not been damaged in the sum of $3,500.

[9] When we look at the statement which follows this assignment in appellant's brief, we must again complain of its incompleteness. This statement falls far short, in our opinion, of a full, complete, and fair statement and enumeration of all the evidence, or rather the substance of same, bearing upon this contention. Nevertheless, we have considered this assignment, and have gone to the statement of facts for the purpose of acquainting ourselves with all the facts bearing upon this contention. After having done so, we have no hesitancy in saying that the assignment cannot be sustained, and must be overruled. There is proof in this record—positive proof—in substance that at the time of his injuries appellee was a man 42 years of age, in robust health. He was a farmer by occupation, and in connection with that business owned and operated a cotton gin. After he was injured, he was taken immediately to appellant's hospital at Palestine, and was there confined under treatment of

appellant's doctors for 12 days, and he was then removed to his home, and for a period of approximately 6 weeks he was unable to get about, but was confined to his house, and would have to be assisted and helped in order to get around the place. It was shown that his shoulder was so badly injured that he has been unable to raise his left arm above a level with his head, and that he cannot chop with an axe, for the reason that he can only now use one hand for that purpose, and, further, it is shown that he cannot use a hoe in his farming, for the reason that after a very short time in the attempt his shoulder gives him such pain and trouble that he has to desist. This was his condition approximately two years after the injuries had been sustained. It is also shown that he suffered a great deal of physical pain in consequence of the injuries sustained, and he testified, positively, that by the injuries sustained his physical capacity for work had been reduced fully two-thirds. Unquestionably, the testimony shows, at least there is abundant testimony to warrant the finding by the trial court, that the appellee is permanently and seriously injured, and we have no hesitancy in concluding that the court's finding that $3,500 is no more than reasonable compensation for such injuries has abundant support in the evidence.

[10] With reference to the contention that the evidence shows that whatever permanent injuries, if any, appellee has received, was in consequence of his disobedience of his physician's instructions, etc., we have to say that this cannot be claimed to be shown by the undisputed evidence. On the contrary, the evidence is abundantly sufficient to warrant a finding that the appellee used ordinary care and prudence in the treatment of his injuries, and that was the degree of care required of him. T. & P. Ry. Co. v. McKenzie, 30 Tex. Civ. App. 293, 70 S. W. 238; I. & G. N. Ry. Co. v. Duncan, 55 Tex. Civ. App. 440, 121 S. W. 368; West Lbr. Co. v. Keen, 221 S. W. 625.

What we have said already disposes of the eighth, ninth, and tenth assignments, and they, too, are overruled.

The judgment of the trial court will be affirmed.