**GALVESTON, H. & S. A. RY. CO. v. McCRO-REY et al. (No. 1283—5341.)**

Commission of Appeals of Texas, Section A. Feb. 5, 1930.

Baker, Botts, Parker & Garwood, of Houston, and Miller & Hopkins, of Gonzales, for plaintiff in error.

Midkiff & Green, of Gonzales, and Allen Hitzfeld, of San Antonio, for defendants in error.

CRITZ, J. This suit was instituted by A. W. McCrorey, against the Galveston, Harrisburg & San Antonio Railway Company to recover damages for personal injuries, and to his automobile, caused by a collision between the automobile driven by the plaintiff, and a passenger train of the railroad company, on a public road crossing, while he was traveling along the public road, and attempting to drive his automobile across the railroad track.

The Maryland Casualty Company intervened in the suit and alleged that it had in force a policy of insurance issued under the terms and requirements of the Employers' Liability Act of the state of Texas (Rev. St. 1925, arts. 8306–8309, as amended), to the Pierce Petroleum Company, a corporation, employing more than three employees, and at the time of the injuries McCrorey was in the employment of such oil company, and that intervener was subrogated to the plaintiff's claim against the railroad company on account of certain sums of money paid out by it on account of said insurance policy.

The case was tried with a jury who made special findings, and on such findings judgment was rendered for McCrorey in the sum of $9,403.50, and for the casualty company in the sum of $1,096.50.

The case was duly appealed by the railroad company to the Court of Civil Appeals for the Fourth District of San Antonio, which court in all things affirmed the judgment of the trial court. 10 S.W.(2d) 1021. The case is now before the Supreme Court on writ of error granted on application of the railroad company.

For convenience we will hereafter call McCrorey plaintiff, and the Galveston, Harris-

burg & San Antonio Railway Company the railroad company.

The negligence alleged by the plaintiff in his suit against the railroad company was: (a) That the railroad company permitted an embankment on its right of way on the south side of its track, and along a cut through which the train approached the crossing to be, and remain so high as to obscure from the view of persons traveling along the public road south of the track trains approaching the crossing from the east through such cut, and in permitting grass and weeds to grow, accumulate, and remain on the right of way near its track, and on the embankment so as to further obscure such view; (b) that the train which collided with the plaintiff's automobile was run at a high and dangerous rate of speed, and was suddenly, and without warning or signal, dashed onto the crossing through said cut at a speed of more than 65 miles per hour; and (c) that the persons in charge of the train failed to ring the bell or blow the whistle on the locomotive engine at a distance of at least 80 rods from the public crossing, as required by article 6371, R. C. S. of Texas 1925.

The railroad company answered by general and special exceptions, general denial, and that plaintiff was guilty of contributory negligence in various specified particulars.

The trial court submitted the case upon special issues in response to which the jury returned a special verdict.

The only issues involving negligence on the part of the railroad company as submitted by the court to the jury were special issues Nos. 3, 4, 5, and 6.

Special issue No. 3 submitted three questions as follows:

(a) "Do you find from the evidence that at the time of the collision of defendant's train with the automobile of plaintiff there were obstructions in and along defendant's right-of-way, such as to obstruct the defendants' said train as it approached the crossing where said collision occurred from the view of travelers along the highway situated as the said plaintiff, A. W. McCrorey was situated on said occasion?"

(b) "Do you find from the evidence that the presence of such obstructions in and along said right-of-way was negligence on the part of the defendant company, as that term has been explained to you?"

(c) "Was such negligence a proximate cause of the plaintiff's injury?"

The jury answered all of these questions "Yes."

Special issue No. 4 submitted the issue of negligence with reference to the rate of speed at which the train was run, and was answered in favor of the railroad company.

Special issue No. 5 submitted the question as to whether the whistle was blown at a distance of 80 rods, and was also answered in favor of the railroad company.

Special issue No. 6 submitted the issue of negligence with reference to whether the railroad company failed to ring the bell at a distance of 80 rods, and whether said bell was kept ringing until the train had passed the crossing. The jury answered this issue in favor of the railroad company.

The trial court also submitted certain issues with reference to contributory negligence on the part of plaintiff, which were answered in his favor.

After the jury had returned their verdict, and before any judgment had been rendered thereon, the railroad company and the plaintiff both filed their motions for judgment. The court overruled the motion of the railroad company, and sustained the motion of the plaintiff, and entered judgment as hereinbefore stated.

At the proper time the railroad company duly filed and presented to the trial court its written exceptions and objections to the whole of special issue No. 3, and subdivisions (a), (b), and (c) thereof upon the grounds that such issue submitted a fact or facts merely incidental, and not ultimate or controlling, and did not (taken separately or as a whole) submit an ultimate issue, and because question (b) of issue 3 was error, in that the mere presence of the obstructions pleaded and proved was not, and could not, under the pleadings and evidence, as a matter of law, constitute actionable negligence on the part of the railroad company. These exceptions were all overruled by the trial court and proper exceptions reserved.

An examination of the verdict of the jury as a whole discloses that the only allegations of negligence on the part of the railroad company which were sustained by the jury's verdict were those with reference to permitting the embankment and weeds on its right of way. All other allegations of negligence contained in the plaintiff's petition were found in favor of the railroad company.

■ We are therefore confronted with this one question: Can a judgment predicated on a bare jury finding that the railroad company was negligent in permitting obstructions on its right of way; and that such negligence was the proximate cause of the injury, as a matter of law, sustain a judgment for damages, when the balance of the verdict expressly finds on all issues submitted that the railroad company was not negligent in any particular in operating the train on and across the crossing on the occasion in question?

We are of the opinion that this question should be answered in the negative. Missouri, K. & T. Ry. Co. v. Rogers, 91 Tex. 52, 40 S.

W. 956; International & G. N. Ry. Co. v. Knight, 91 Tex. 660, 45 S. W. 556, 557.

In International & G. N. Railway Co. v. Knight, supra, opinion by Chief Justice Gaines, the Supreme Court refers to, interprets, and expressly approves the Rogers Case, and announces the law on this question in the following language:

"The second assignment is that the court erred in the following paragraph of its charge to the jury: 'Or if you believe, by a preponderance of evidence, that the defendant company, by its agents, servants, or employees, had placed or allowed to be placed upon their right of way and switch track obstructions in the shape of houses, cotton platform, cattle chute, ties, or box cars, which would obstruct or prevent the seeing of a train passing over the track of defendant's road at said crossing by a person attempting to cross over said track at said crossing, you are instructed that they had a right to do so, if for a lawful and proper purpose. But they would be required to exercise extra caution in approaching said crossing under such circumstances; and if you shall believe, by a preponderance of the evidence, that the failure of the engineer to blow his whistle or ring his bell upon approaching said crossing (if you believe, by a preponderance of the evidence, that he so failed), and the placing or allowing said obstruction (if so placed or allowed to be placed), was or were such an act or acts as an ordinary prudent person would not have committed under like circumstances, and was negligence, and was the proximate cause of the death of said deceased, and that the plaintiff was damaged thereby, and that the deceased was not guilty of negligence which contributed to his death, then the plaintiff can recover; but if he was guilty of such contributory negligence in going upon said crossing under such circumstances he cannot recover.'

"In the case of the Missouri, Kansas & Texas Railway Co. v. Rogers, 91 Tex. 52, 40 S. W. 956, we held that it is not negligence for a railroad to put on its right of way obstructions to the view of one approaching a crossing, whether the obstructions be placed there by the railroad for its own use, or by another, by the railroad's permission, to be used in connection with the business of the road; but it is merely a matter to be considered on the question whether there was negligence in the operation of a train at the crossing. It is obvious in the present case that the obstructions which were placed near the track of the defendant company were the ordinary structures used by the company in receiving and discharging its freight. When near a crossing, such structures necessarily obstruct the view of those using the highway, in passing over the track. From the very nature of the case, at every depot of a railway company the view of approaching trains must in some

measure be shut off by the buildings which are requisite to the transaction of its business; and hence the erection and maintenance of such buildings cannot, on account of their obstructing the view of the track, be deemed negligence either in law or in fact. The effect of the latter part of the charge complained of is to instruct the jury that if they should find that the engineer failed to ring the bell or blow the whistle upon approaching the crossing, and that either such failure or the placing of the obstructions was an act of negligence and was a proximate cause of the injury, they should find for the plaintiff. While the failure to give the signals and the placing of the obstructions are not expressly put in the disjunctive by the use of the word 'either,' such is the meaning of the language employed. If the words had been, 'were such acts as an ordinary prudent person would not have committed under like circumstances and were negligence,' the defendant company could not have complained, for the reason that before the jury could have found for the plaintiff they would have been required to find the engineer negligently failed to give the signals, and that such failure was the cause of the injury. Such a charge would have required the jury to find more than was necessary to a recovery, and in that respect would have been error in favor of the defendant. But the language, 'was or were such act or acts as an ordinary prudent person would not have committed,' etc., clearly means that if either of such acts was negligent; and the effect of the instruction is to authorize the jury to find for the plaintiff, provided they found either that there was a negligent failure to give the signals, or that the placing of the obstructions on the track was negligent. From what has already been said, it follows that, in our opinion, this was error.

"A prudent man, operating trains along the track of the defendant company, may have exercised more care by reason of the obstructions than he would have exercised had they not existed. Otherwise the existence of the structures did not affect the case. Railway Co. v. Rogers, supra. The question for the jury was, would or would not a prudent man, under all the circumstances, have acted as the servants of the defendant company did act; and we doubt the propriety of giving any specific instructions to the jury with reference to the obstructions."

So far as we have been able to find, the holding in the Knight Case has never been modified or overruled by our Supreme Court, and the rule there announced is still the rule of this state. The Knight Case clearly and without equivocation announces the rule: "It is not negligence for a railway to place upon its right of way obstructions to the view by one approaching a crossing, but merely a matter to be considered on the question whether there was negligence in the operation of

the train." We have quoted from the syllabus of the Knight Case.

It follows from the above rule that special issue No. 3 called for findings of fact not ultimate or controlling, and did not submit an issue upon which a judgment for damages could be predicated.

. In the case at bar the jury expressly found, in response to special issues submitted: (1) That the rate of speed at which the train was operated, as it approached and passed the crossing in question, did not constitute negligence on the part of the defendant; (2) that those in charge of the train did not fail to blow the whistle at a distance of 80 rods from the crossing; and (3) that the bell attached to defendant's locomotive was rung at a distance of at least 80 rods from said crossing and .was kept ringing until the train had passed.

The Court of Civil Appeals holds:

"It is too well settled now to urge that the presence of obstructions on a railroad track or right of way is negligence per se. The presence of such, whether necessary to the railroad's business or otherwise, is a jury question on the theory of negligence. Baker v. Hodges (Tex. Civ. App.) 231 S. W. 847; Receivers, Houston & T. C. Ry. Co. v. Stewart [Tex. Sup.] 17 S. W. 33. We held in Galveston, H. & S. A. Ry. Co. v. Michalke, 14 Tex. Civ. App. 495, 37 S. W. 480, obstruction raising a question of per se negligence involved a question of fact to be left to 'the jury to say whether or not it was (negligence) under the circumstances in evidence before them.'

"Whether or not the embankment left standing with growing grass, which obstructed the view of appellee and kept him from seeing the suddenly appearing train, contributed to the injury of appellee, was a question for the jury. Missouri, K. & T. R. Co. v. King (Tex. Civ. App.) 123 S. W. 151. The embankment and grass growing thereupon did not constitute an independent ground of negligence. Hines v. Smith (Tex. Civ. App.) 235 S. W. 654. The negligence, if any, of appellant in permitting the embankment and growing weeds which obstructed the view of any one approaching the crossing, was actionable negligence, but as to whether it contributed to the injuries of appellee was a jury question. St. Louis, S. F. & T. R. v. Allen (Tex. Civ. App.) 296 S. W. 950."

Baker v. Hodges, cited by the Court of Civil Appeals, holds that there is a direct conflict on the issue here decided between the Stewart and Michalke Cases on the one hand, and the King Case, the Harris Case, 22 Tex. Civ. App. 16, 53 S. W. 599, and the Eddleman Case (Tex. Civ. App.) 175 S. W. 777, on the other. The court then expressly declines to pass on this issue and decided the case on other matters.

When carefully considered we see no conflict between the holding in the Stewart Case, which is by the old commission, and the hold-

ing in the Knight Case. In the Stewart Case it is held: "It cannot be said, as a matter of law, that the legitimate use of the side tracks of a railroad, in storing its cars or switching its trains, is or is not negligence. Whether or not it be negligence would depend upon the manner of use and the circumstances attending it."

█ We interpret the above as holding that obstructions alone cannot constitute an independent ground of negligence, but, in order to do so, there must be negligence in the "manner of use and the circumstances attending it." However, if there is any expression in the Stewart Case which can be construed· as in conflict with the Knight Case, the latter, being the last expression by the Supreme Court, must rule.

In the Michalke Case, cited by the Court of Civil Appeals, the jury returned· a verdict as follows: "We, the jury, find that the defendant did not use proper caution in allowing its right of way to be obstructed so plaintiff could not see the train, which was running at a greater rate of speed than was allowed by law; therefore we find for plaintiff," etc.

The opinion further shows: "The injury to appellee was caused by the negligence of appellant in placing obstructions upon the track so as to obstruct the view of appellee in approaching the track, in running the train at a rate of speed prohibited by the ordinances of the town of Weimar, and in failing to blow its whistle or ring its bell as required by statute. Appellee was not guilty of contributory negligence in attempting to cross the street."

█ It will be seen that the Michalke Case, as shown by the facts and the verdict, did not involve a recovery based alone on an obstruction. Furthermore, if anything is said in this opinion which is in conflict with the Knight Case, the latter is by the Supreme Court and must obtain. Also it was delivered after the Michalke Case, which is by the Court of Civil Appeals.

The opinion in the King Case, cited by the Court of Civil Appeals, shows: "The evidence warrants these conclusions: (1) That J. E. King was killed by a train of the railway company while being operated at said crossing. (2) That M. E. King and Gordon King, minor, are the surviving wife and son of J. E. King, deceased. (3) That said train was running at an excessive and dangerous rate of speed. (4) That the operators of said train failed to give the statutory signal for said crossing. (5) That defendant negligently permitted trees and a coalhouse to be and remain on its right of way, which obstructed the view toward the west of parties approaching said crossing from the south; the track running practically east and west, and the street north and south. (6) That the engineer failed to keep a proper lookout. (7) That upon the discovery of deceased to be in peril the en-

gineer failed to use the means available, consistent with the safety of the train, to avert striking the deceased. (8) That J. E. King was not guilty of contributory negligence. (9) That the verdict is not excessive."

The above facts show that recovery was not based on obstructions alone, but also on negligence in operating the train, failure to keep proper lookout, and discovered peril.

The Smith Case, cited by the Court of Civil Appeals, holds:

"Special Issue No. 7 submitted for the jury's consideration was as follows:

"'Did the servants, agents, and employees of defendant permit and allow weeds, grass, trees, and bushes or other obstructions to grow upon the right of way of said railroad track so as to shut off and obstruct the view of trains approaching said crossing by persons approaching said crossing at the time plaintiff's wife is alleged to have been struck and injured?'

"This issue was submitted over the objection of appellant. There are several contentions as to why it was improper to submit this issue to the jury. The first is that appellee did not plead the existence of this obstruction as an independent ground of negligence, and therefore there was no pleading as a basis for the submission of such issue. In this contention appellant is correct. As we construe appellee's pleading, the obstruction to the view of an approaching train by reason of the presence of grass and weeds, etc., mentioned was only mentioned as a reason why appellant's operatives in charge of the train should have approached the crossing with greater care. The court, therefore, had no basis in the pleading for the submission of this special issue, and all of appellant's assignments in that connection are well taken. But we cannot possibly see how this error on the part of the court was prejudicial to appellant. Indeed, the court, in effect, instructed the jury that the presence of these weeds and grass, etc., constituting the obstruction, could only be considered by the jury in determining whether the operatives in charge of the train were guilty of negligence in handling the same at the point of the collision. Just why he submitted special issue No. 7 with that view of the law in mind we are unable to understand. The jury, however, found expressly that appellant's operatives were guilty of negligence in failing to blow the whistle at the proper distance from the crossing, and that this was a proximate cause of the collision, and further found that the operatives were guilty of negligence in failing to ring the bell and to keep the same ringing, as required by statute, and that this failure was a proximate cause of the collision. So we say that the trial court's mistake in submitting special issue No. 7, together with the other

issues in that connection, was harmless and could not have prejudiced in the least appellant in this cause."

The Court of Civil Appeals in this case expressly declines to decide the question here under consideration, holding it unnecessary, and disposes of the case on other issues.

The Supreme Court granted a writ of error in the Allen Case, cited by the Court of Civil Appeals, but later it was dismissed by agreement, and no opinion delivered. However, the verdict of the jury in that case discloses that the railroad company was found guilty of negligence in several particulars, and the judgment is not based upon negligence predicated on obstructions alone. If anything is said in the opinion of the Court of Civil Appeals which can be construed as in conflict with the Knight Case, it should be overruled.

We have given this matter unusual care and consideration, and we have found no opinion by the Supreme Court overruling the law as announced by Judge Gaines in the Knight Case. The law as announced in that case is the last expression of our Court of last resort on the question, and must rule until overturned by the Supreme Court.

Since the verdict of the jury is for the railroad company, we recommend that the judgments of the Court of Civil Appeals and the trial court be both reversed, and judgment here rendered for the railroad company.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.