The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellant,

v.

Robert L. RUBRECHT, individually and as next friend for Bonnie Sue Dennis, et al., Appellees.

No. 17011.

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 19, 1969.

Rehearing Denied Oct. 24, 1969.

Henry & Hatcher, Gainesville, Hudson, Keltner, Smith & Cunningham, and Joe Bruce Cunningham, Fort Worth, for appellant.

Sullivant & Harris, Gainesville, Helm, Jones & Pletcher, and David H. Burrow, Houston, for appellees.

## OPINION

LANGDON, Justice.

Robert L. Rubrecht, individually and as next friend for Bonnie Sue Dennis (a stepsister by marriage), a minor age 6, hereinafter called plaintiff, initiated this suit to recover a monetary judgment against The Atchison, Topeka and Santa Fe Railway Company, hereinafter called defendant, for personal injuries to the minor child arising out of a motor vehicle-train collision which occurred at a grade crossing on Garnett Street in Gainesville, Texas, at about 2:20 P.M. on August 29, 1966. Garnett Street runs in an east-west direction and the railroad track in a north-south direction. Immediately prior to and at the time of the accident the train was traveling in a northerly direction and the Chevrolet pickup truck occupied by Bonnie Sue Dennis, plaintiff, and being driven by her stepmother, Elsie Dennis, was traveling in a westerly direction on Garnett Street. Elsie Dennis was killed in the accident and Bonnie Sue Dennis, plaintiff, was injured. Because of the death of the former and the age and mental capacity of the latter no occupant of the pickup truck involved in the accident testified at the trial. The only persons who actually saw the accident and testified were the engineer, W. E. Pipes, and fireman, V. L. Prater, on the train, and two ladies, Estelle Butler and Helen Foster (sisters), sitting in an automobile which was parked west of the crossing on Garnett Street as the train approached. They were waiting for the train to pass before proceeding over the crossing. While so parked they observed the pickup truck driven by Elsie Dennis coming toward them. Rubrecht did not see the accident. There were no other witnesses identified in this record who actually saw the accident.

The case was tried to a jury beginning on April 22, 1968, and on April 26, the jury returned a verdict based upon its answers to 51 special issues.

The defendant filed a motion to disregard the findings as to certain issues and a motion for judgment non obstante veredicto. The motion was overruled on June 28, 1968. On the same date the court entered judgment against defendant in the sum of $31,000.00 and ordered it to pay court costs.

The judgment entered was on behalf of Bonnie Sue Dennis and Robert L. Rubrecht, individually, in the amount of $31,-000.00. It ordered the defendant to pay $10,333.33 of such amount directly to David H. Burrow of Helm, Jones and Pletcher and Carroll F. Sullivant of Sullivant, Meurer & Harris and the remaining sum of $20,666.67 into the registry of the court for the use and benefit of the minor plaintiff, Bonnie Sue Dennis. Defendant's amended motion for new trial was overruled and the appeal perfected.

The jury by its verdict found the defendant negligent in five respects. Three of such findings of negligence concern the speed of the train and the other two findings concern the growth of weeds and trees on the right of way of defendant. The judgment therefore must be based upon one or more of such findings of negligence and proximate causes, otherwise it cannot stand.

The appeal is based upon twenty-six points of error, the first five of which attack the jury's findings of negligence and proximate cause concerning the speed of and failure to slow the train. Appellant by these points contends that the operation of the train on the occasion and place in question was not negligence and not a proximate cause as a matter of law. The points involve no evidence and insufficient evi-

dence and the contention that because of the foregoing reasons it was error to overrule its motions for (1) instructed verdict; (2) to disregard the findings; (3) judgment non obstante veredicto; and (4) its motion for new trial.

By points 6 through 10, both inclusive, appellant argues that there is no evidence or insufficient evidence in support of the jury's answer to special issues 16, 17, 20 and 21 involving findings of negligence and proximate cause in the failure to remove trees and grass from the right of way. Further it is contended that such failure to remove the trees and grass was not negligence as a matter of law as there was no duty to remove them.

Other points raised by the defendant deal with certain acts on the part of Elsie B. Dennis, alleged to be the sole cause of the accident (points 11, 12); the limitation placed on defendant's attorney of his cross-examination of plaintiff's witness, Lockie Owens (14–16); the trial court's charge (17); the appointment of guardian ad litem for the minor, Bonnie Sue Dennis (18–20); the taxing of past and future medical expenses to the defendant (20–25); and the form of the judgment which ordered $10,333.33 to be paid to the attorneys for plaintiff. While some of these points present matters of concern, particularly as to the guardian ad litem appointment of a brother of one of plaintiff's attorneys, the form of judgment entered on behalf of plaintiff's attorneys, and the trial court's limitation on cross-examination of key witnesses, it is not necessary for us to reach these points to dispose of the case.

The engineer, W. E. Pipes, testified that the train, consisting of three locomotives and 14 cars, was traveling 40 miles per hour as it approached the crossing and was right on the crossing when he first saw the vehicle occupied by plaintiff. The pickup truck hit the front step and the front grab iron on the right front of the lead diesel unit. At the time he first saw the truck, he put the brakes in emergency. On either side of the right of way, there is a creek and trees right up to the right of way so that you cannot see a vehicle approaching the track until it is within the right of way. Because of this obstruction of the trees, he could not see the pickup truck and the pickup truck could not see him until the vehicle was within the right of way. As he approached the crossing, the bell in the diesel was in operation and he blew the whistle as he approached the crossing. The whistle was blowing when the accident occurred.

The fireman, V. L. Prater, testified that he was on the left (west) side of the diesel. From the position where they sit he and the engineer have a good vision to the front and to the side. As they approached Garnett Street, he was looking to the front and also to the side. There was an automobile that approached from his side (west). (This was the car occupied by Mrs. Butler and Mrs. Foster, sisters, and two children of the latter.) It stopped at the crossing. He never did see the Dennis vehicle which approached from the east side. He heard the impact and at almost the same time that he heard the impact, the engineer applied the brakes in emergency. As they approached the crossing the whistle was being blown loudly.

In the automobile which approached from the west side of the railroad track and stopped were the two sisters, Estelle Butler and Helen Foster. Mrs. Butler testified: they were traveling east on Garnett Street at about 2:20 P.M. and were on their way home. They turned onto Garnett Street from Lindsey Street, one block from the railroad track, and at the time that they turned onto Garnett she observed that the signal lights at the railroad track were in operation. She also heard the whistling of the train. Because of the whistling of the train she could tell that the train was approaching from the south so that she pulled up and stopped at the crossing. She stopped some distance back from the railroad track and continued hearing the train whistle after she had

stopped. Also after she had stopped her vehicle, the signal lights facing towards her or to the west continued to flash. When she first heard the train whistle she could not see the train. When they first approached the crossing she did not see any traffic coming from the east but, after they had stopped a little while, she did see a blue pickup approach the crossing from the east traveling west. She noticed this pickup truck when the pickup was still to the east of the Katy railroad crossing. As the pickup approached the railroad track, she did not recognize the driver but as it got closer she could tell that it was a woman and that there was a passenger in the pickup. She could not estimate the speed of the pickup but it did not look like it was traveling too fast. The driver of the pickup did not turn her head in either direction as she approached the railroad track and also the speed of the pickup did not change at all. She last observed the pickup just before the train blocked her view and at that time, the train was still blowing its whistle. She did not see the train collide but she did hear an impact. The train had the crossing blocked when it came to a stop so that she had to walk around to the south of the train in order to get on the other side where the pickup truck was. When she got on the other side of the train, she saw that the flashing lights were working and in operation on that side of the railroad track also and were still in operation. She learned that the driver of the vehicle had been Elsie Dennis.

Mrs. Foster testified that she was sitting in the right front of the automobile being driven by Mrs. Butler. Her two children were in the back seat. She observed when they turned onto Garnett Street that the flashing lights at the railroad track were in operation. She observed that the lights on both sides of the street were in operation and were blinking. She also heard the train whistle. She could not see the train but could tell that the sound was coming from the south and that the train was approaching from the south. She first observed the pickup when it came over a rise east of the bridge. As they sat at the crossing, she continued to hear the train whistle blow and observed the train prior to the time that it reached the crossing and observed that the headlight was on. As the train approached the crossing it continued to whistle and in fact, her children complained because the whistle was so loud it hurt their ears. She observed the pickup approach the crossing and it did not look to her like the driver of the pickup ever looked either to her left or to her right. She could not tell that the pickup truck varied its speed at all and she does not know how fast the pickup was traveling but it was not fast. The pickup truck never did stop and did not even reduce its speed. She did not see the impact because the train blocked their view but the train gave a little jerk and she knew that it had hit the pickup. Based upon the undisputed testimony and the photographs in evidence it appears obvious to us that the pickup truck ran into or hit the side of the train engine near its front end at the location of the front step and grab iron. The principal damage to the pickup was to its front end. Had the train run into or hit the side of the pickup in the act of crossing the tracks it would have been observed by the two women witnesses and they would not have been required to walk around the train after the collision in order to view the pickup and its occupants.

As has been observed, the above testimony was elicited from the only living witnesses who actually were at the scene of and witnessed the accident in question other than plaintiff, the incompetent minor child.

Robert L. Rubrecht testified that to the east of the railroad tracks there is a creek with trees up and down the creek and weeds at the crossing but that the weeds in no way blocked the motorist approaching from the east from seeing the signal devices at the crossing.

The police officer who investigated the accident for the City of Gainesville testified that he went to the scene on the day of the accident; that the Johnson grass that was on the right of way would not interfere with a motorist's seeing the flashing lights; that in his opinion, the Johnson grass that was on the right of way would not interfere with the vision of the driver of the pickup truck.

In our opinion, based upon the undisputed testimony and the record as a whole, we are unable to hold that plaintiff sustained its burden of proof either with regard to showing negligence or proximate cause.

Plaintiff relies heavily on the fact that the train was traveling at a rate of speed (42 miles per hour) in excess of the speed limit for railway trains within the city limits of Gainesville which was 15 miles per hour.

A similar ordinance was involved in the case of Hardgrave v. Texas & Pacific Railway Company, 401 S.W.2d 693 (Dallas, Tex.Civ.App., 1966), reversed by the Supreme Court of Texas in Texas & Pacific Railway Company v. McCleery, 418 S.W. 2d 494 (1967). The train was traveling approximately 25 miles per hour while the ordinance restricted the speed to 12 miles per hour. Hardgrave was the driver of the auto and McCleery was a passenger. Hardgrave went out of the case on findings of contributory negligence so in the Supreme Court only the cause of action of the passenger, McCleery, remained. The jury found that the T & P Railroad had violated the city ordinance in traveling at a speed in excess of 12 miles per hour and that such violation was a proximate cause of the collision. In the Court of Civil Appeals, Judge Claude Williams writing for the Court held that there was some evidence to support the finding that the speed was a proximate cause, but held that the evidence was not sufficient and consequently reversed and remanded saying the following:

"By their first and second cross-points appellees say that if the district court erred in disregarding Special Issues 15, 16 and 17 then the judgment against appellant McCleery should be reversed and remanded for a new trial, and not reversed and rendered, because the evidence is factually insufficient to support the jury's answers to said issues or such answers are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Having carefully analyzed the record as a whole we agree with appellees that the evidence is legally insufficient to support the jury's answer to Special Issue No. 17 to the effect that the speed of the train was a proximate cause of the collision. For that reason we think that the trial court should have granted appellees' motion for new trial based upon this assignment of error and hence we reverse and remand the cause for a new trial, rather than reverse and render the same in favor of McCleery, as requested by him."

In the Supreme Court, the only issue was whether there was any evidence to support the issue on proximate cause. The Court held that there was not and reversed and rendered judgment for the railroad.

In Texas & Pacific Ry. Co. v. Floyd, 309 S.W.2d 525 (Dallas, Tex.Civ.App., 1958, ref., n. r. e.), the plaintiff also was a passenger in a vehicle which was struck by defendant's train. It was also undisputed that the train whistle was blowing, that the bell was sounded and that the electric signal lights at the intersection were flashing their warning. The accident occurred within the city limits of the City of Dallas and the jury found that the train was being operated at a rate of speed in excess of 12 miles per hour in violation of the city ordinance and that such violation was a proximate cause of the accident. On appeal, the railroad contended that there was no evidence or insufficient evidence to support the jury's finding that such speed was a proximate cause of plaintiff's injuries. This is the same contention that defendant makes in this case. In sustaining

the position of the railroad and reversing and rendering judgment for the railroad, the Court declared:

"The speed of the train was a prior or remote cause not closely enough connected in a causal manner to be considered a proximate cause of appellee's injuries. The speed of the train did nothing more than furnish the condition which gave rise to the occasion when appellee was injured. The train's speed in excess of 12 miles per hour may be said to have had a causal connection with appellee's injuries only in the sense that if the train had not been in the vicinity of the crossing at the time the automobile stalled on the tracks, appellee probably would not have been injured. That is not sufficient. Here we have a remote causal connection, broken by an intervening cause, which remote cause falls far short of proximate cause under our law."

▮ Neither do we believe that the failure to remove an obstruction from the right of way was an ultimate fact issue upon which the trial court could enter judgment against defendant. In Texas & N. O. Ry. Co. v. Adams, 27 S.W.2d 331 (Beaumont, Tex.Civ.App., 1930, writ dism.), the Court had before it a finding of the jury to the effect that the railroad was negligent in failing to remove an obstruction on the right of way. In holding that this could not be a basis for judgment entered against defendant, the Court said:

"Moreover, whatever the situation was as to the nature of the obstruction, if any, existing at or near the crossing, it is well settled in this state that it is not negligence for a railway to place or permit to be upon its right of way obstructions to the view of one approaching a crossing, but that same is merely a matter to be considered on the question whether there was negligence in the operation of the train. In other words, it is not negligence for a railway to place on its right of way obstructions to the view of one approaching a crossing, but that it is merely a matter to be considered

in determining whether there was negligence in the operation of the train."

In Wichita Falls & Southern R. Co. v. Anderson, 144 S.W.2d 441 (Eastland Tex. Civ.App., 1940, dism. judg. cor.), the third ground of negligence alleged by the plaintiff against the railroad in a crossing accident case was the "failure to clear timber and underbrush from defendant's right of way." This ground of negligence was submitted to the jury by the following special issue:

" 'Do you find from a preponderance of the evidence that at the time of the accident the defendant had failed to clear the timber and underbrush, if any, of sufficient size to obstruct the view from its right of way to the left of the occupants of the automobile as they approached the crossing in question?' "

The jury answered this issue "yes" and also found that such failure was negligence and that such negligence was a proximate cause of the accident. This finding by the jury was before the appellate court on appeal and in holding that this finding could not be the basis of any judgment entered against defendant, the Court stated: "It is admitted by plaintiffs that the verdict upon said third ground of negligence, although in favor of the plaintiffs, will not support the judgment. Such admission is made in recognition of a legal proposition to the effect that the failure of the operator of a railroad to remove obstructions to the view of the railroad by persons upon a highway, approaching a crossing, is not a ground of actionable negligence. This proposition is supported by many decisions of the courts of this State, of which it is deemed sufficient to mention only the following: Galveston, H. & S. A. Ry. Co. v. McCrorey, Tex.Com.App., 23 S.W.2d 691; Missouri, K. & T. Ry. Co. v. Rogers, 91 Tex. 52, 40 S.W. 956; International & G. N. Ry. Co. v. Knight, 91 Tex. 660, 45 S.W. 556; Oden v. Texas & P. Ry. Co., Tex.Civ.App., 9 S. W.2d 367."

In applying the holdings of the above cited and other authorities to the facts of this case we have concluded and hold that the operation of the train and maintenance of the right of way on the occasion and place in question was not negligence nor a proximate cause of the collision in question as a matter of law.

The judgment of the trial court is accordingly reversed and judgment rendered on behalf of the defendant.

Reversed and rendered.